THOMPSON *et al. v.* ANGELL *et al.*

(*Supreme Court, General Term, First Department.* January 16, 1891.)

ESTOPPEL—BY DEED.

After the death, intestate, of a married woman, leaving her husband and children surviving, the husband married again, and he and his second wife, whose baptismal name was the same as that of the first wife, conveyed land, of which the first wife had died seised, and in which the husband had merely an estate by curtesy, to grantees in good faith, who supposed the wife named in the deed to be the wife who had held the title. Afterwards the husband bought other land, with the proceeds of such conveyance, and conveyed to one of the children of the first wife, and caused him to execute a declaration of trust for the benefit of all her children, which contained a recital that the husband had caused her real estate to be sold, and had received the purchase money on the understanding that he held the same for the use of her children. Before this, the children were aware of the substitution of property; and they afterwards conveyed the property so held in trust, and

received the consideration. *Held* that, in the absence of any testimony by them denying knowledge of the facts, they could not recover, in ejectment, upon their legal title as heirs of their mother, her real estate so conveyed by their father.

Appeal from circuit court, New York county.

Action of ejectment by Ambrose Thompson, Emily Chase, Julia Geddings, and Charles Ambrose Aldis, an infant, by his guardian *ad litem*, against John B. Simpson and Albert C. Angell. Plaintiffs appeal from a judgment for defendants entered upon a verdict directed by the court, and from an order denying a motion for a new trial.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*William C. Cox*, (*James R. Cox*, of counsel,) for appellants. *D. G. Crosby*, for respondent Simpson. *C. Shaffer*, (*Joseph H. Choate*, of counsel,) for respondent Angell.

VAN BRUNT, P. J. This was action of ejectment, brought to recover possession of the lot and premises known as "No. 44 Hudson Street," in the city of New York, from the defendant Angell, as tenant in possession, and John H. Simpson, as owner, from whom Angell hired. The plaintiffs claim to be entitled to possession as the heirs of Mary Evalina Thompson, the mother of some, and the grandmother of others. In October, 1835, the said Mary Evalina Thompson married one Ambrose W. Thompson, and in 1838 became seised of the property in question in her own right of inheritance. In September, 1845, she died, intestate, being then seised and possessed of the premises in question, leaving her surviving, her husband, Ambrose W. Thompson, who died in May, 1882, and the plaintiffs Ambrose Thompson, Emily Chase, and Julia Geddings, her children, and another daughter, Margaret Aldis, who subsequently died, intestate, leaving the plaintiff Charles Ambrose Aldis her only child and heir at law. Ambrose W. Thompson, about two years after the death of his first wife, intermarried with Mary Ewing Richey, the second wife thus having the same baptismal name and the same middle initial as the deceased wife, both being Mary E. Thompson. In 1853, Thompson and wife sold the premises in question to John H. Glover and wife, Glover supposing that the Mary E. Thompson was the same Mary E. Thompson upon whom the title to these premises had devolved in 1837, and in the deed taken by Glover the devolution of the title upon Mary E. Thompson was recited. The Glovers improved the property in question, and in 1858 sold the same to one Smith, and Smith's executors, in March, 1882, sold and conveyed the same to the defendant Simpson. All these conveyances were made in perfect good faith, and none of the various grantees had the slightest suspicion of the fraud which had been perpetrated, or of any defect in the title, or of the claim on the part of the first Mrs. Thompson's heirs. There was some evidence from which it might be inferred that Thompson used the money obtained by the original fraud to purchase a house on Madison avenue, in this city. This, however, is challenged by the plaintiffs, but in view of the fact that no request was made to go to the jury upon any point, there being some evidence, although slight, from which this fact might be inferred, and that inference having been drawn by the court, it cannot be disturbed upon appeal. Thompson exchanged this house on Madison avenue for some property at Rye, then owned by John A. Dix, and procured a conveyance of the latter property to his son Ambrose, one of the plaintiffs herein, who was then under age, and he simultaneously with such conveyance executed a declaration reciting that the said Mary Evalina Thompson was, in her life-time and at the time of her death, seised of the premises in question; that her husband had, since her death, caused said premises to be sold and conveyed, and had received and has ever since held and controlled the purchase money thereof, upon the distinct understanding, declaration, and agreement that he held the same for the use and benefit of the children of the said Mary Evalina Thomp-

son, to whom said property descended upon the death of their mother; that the father had thereafter become seised of the house and lot on Madison avenue, which he had lately sold and conveyed to John A. Dix for certain premises at Rye, and had caused the conveyance of the said last-mentioned premises to be executed by said Dix and wife to the said Ambrose, the son; that the sole purpose of such conveyance was to protect and secure the children of said Ambrose and Mary Evalina Thompson in the use and enjoyment of an amount of property equal to that held by their mother, and to that end the said Ambrose should hold and take the said lots and premises in trust for himself and his sisters, and, to carry such purposes into effect, he had promised and agreed to hold same upon said trust, and accepted said deed and took possession of said premises as such trustee. This declaration was recorded simultaneously with the Dix deed. Upon the exchange of the Madison avenue property for that at Rye, a bond and mortgage for $15,000 was given by Ambrose Thompson to Dix on the Rye property. Thompson subsequently, in 1865, mortgaged the Rye property to Thaddeus Davids, to secure $6,000. In 1867, Ambrose Thompson, individually and as trustee for his sisters, and the said sisters themselves, conveyed the property, for an expressed consideration of $60,000, to Benjamin W. Bonney, the assignee of a contract of sale thereof to one Joseph B. Stewart.

At the time of the execution of the deed to Dix, all the children had become of age, and there is evidence tending to show that they had knowledge of the facts contained in the declaration of trust. The purchase-money mortgage for $15,000 was foreclosed in 1868, Ambrose Thompson and his sisters being made parties, which foreclosure resulted in a surplus. Out of this surplus, Davids claimed to be paid the amount due on his mortgage, which claim was resisted by Bonney's representatives, he having died in the mean time, and it was adjudged that the grantee of Ambrose Thompson's sisters was entitled to four-fifths of the surplus, who, through their conveyance to Bonney, owned four-fifths of the Rye property, upon which four-fifths of the mortgage to Davids never attached. There was evidence tending to show that, as early as 1857, the children of Mary Evalina Thompson were aware of this conveyance of the Hudson-Street property. The youngest of Mary Evalina Thompson's children attained her majority in April, 1866, and the defendant Simpson acquired his title, as above stated, in 1882. It would thus appear that these children, knowing their rights, permitted the property to be sold as though a title had been conveyed to the Glovers, without in any manner informing the purchaser of any claim that they might have. At the close of the trial, each party asked for the direction of a verdict. The court directed a verdict in favor of the defendants, and from the judgment, and from an order denying motion for new trial, this appeal is taken.

It is urged upon behalf of the plaintiff that by the deed of Thompson and wife to Glover no greater interest passed than the grantors possessed; that is, the life-estate of Ambrose W. Thompson as tenant by the curtesy. That is undoubtedly true as an abstract proposition, and, unless some of the other circumstances which have been above adverted to prevent the assertion of their title by the children of Mary Evalina Thompson, they would be entitled to recover in this action. We think that there is a principle which precludes these children from asserting now their legal title; and that is, that they have received and participated in the proceeds of this sale with knowledge of the fact of the sale,—with knowledge of the fact that an attempt had been made by Thompson and his second wife to convey the title of these premises in Hudson street. It is urged that there is no evidence to support this proposition, and that, at most, all that the evidence tends to show is that they were aware that their father had sold his life-estate; but we think that the evidence authorizes an additional inference, because we find from the testimony that the children were speaking of this substitution of property as far as back as

1857, and we find in the declaration of trust a recital that Ambrose W. Thompson, since the death of his wife, had caused the said real estate and premises to be sold and conveyed, not his interest therein,—not a life-estate therein,—but the premises to be sold and conveyed, and had received the purchase money upon the distinct understanding, declaration, and agreement that he held the same for the uses and benefit of the children of his first wife. What interest or rights had the children of his first wife in what Thompson sold his tenancy by the curtesy for? It is apparent that the conveyance referred to in this declaration meant a conveyance of the whole fee, and any person reading that declaration must necessarily come to that conclusion. This declaration of trust gave to these sisters a title which they conveyed, and it is reasonable to assume that they knew from whence their interest came.  In any event, it called upon them to show their ignorance.  It is true that, at the time of the trial, three of these children were dead, but there were two living, and able to testify, one of them certainly being a paralytic, but with nothing to show that she would not have made a competent witness; and, under the peculiar circumstances of this case, it seems to us that the rule that where a party may produce evidence throwing light upon a subject pertinent to the inquiry, and fails to do so, it may be presumed that they did not because it would tend against them.

The claim that the trust agreement conferred no rights upon the children until they surrendered and released their inheritance cannot prevail.  They accepted the property conveyed by the trust-deed, and they conveyed that property, and presumably received the consideration.  It is idle to say that a party may receive the fruits of a transaction, and not be bound by its conditions.  Therefore these children, having received the proceeds of this sale knowing that their father and step-mother had attempted to convey an absolute title, are now estopped, under the plainest principle of the law governing estoppel, from setting up a title to property the proceeds of which they have pocketed.  It matters not what you call it,—"ratification," "equitable estoppel," "assumption of the covenant of warranty," or anything else,—the law will not permit the owner of property to accept the proceeds of a sale of that property, even though made by a stranger, and then set up a title in himself; and this principle, we think, controls the disposition of this case.

The counsel calls attention to certain exceptions to the admission of evidence, and urges that it was error, because it was directly adapted and calculated to prejudice the appellants' case, and to enlist the sympathies of the jury, and to distract them from the true issues before them,—a somewhat remarkable claim, in view of the fact that he concedes upon the record that there was no question to be submitted to the jury.  The counsel also, in language little decorous, criticises the citation by the learned judge below of cases in other states in regard to the effect of this evidence.  In view of this fact, it is somewhat remarkable that he should cite in support of his proposition—that, as long as the statutes of this state stand, Ambrose W. Thompson sold his life-estate only—a Maryland case, and the only one cited on that particular point.  Upon the whole case, we think that a correct conclusion was reached by the court below, and the judgment should be affirmed, with costs.

All concur.